UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSHUA RYDER,

                        Plaintiff,

v.                                                          1:23-CV-1102
                                                            (GTS/MJK)
PAUL CZAJKA, Columbia Cnty. Dist. Atty;
RYAN CARTY, Columbia Cnty. Assist. Dist. Atty;
COLUMBIA COUNTY DISTRICT ATTY'S OFFICE;
COLUMBIA COUNTY;
JASON C. FINN, Hudson Police Detective Sergeant;
BRENNAN KEELER, N.Y. State Trooper;
MICHAEL J. BURNS, N.Y. State Police Investigator;
SEAN TASHJIAN, N.Y. State Police Investigator
DAVID JIMENEZ, N.Y. State Police Senior Investigator;
and JOHN DOES #1-10,

                        Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

STOLL GLICKMAN & BELLINA LLP                    LEO GLICKMAN, ESQ.
    Counsel for Plaintiff
300 Cadman Plaza West, Suite 12th Floor
Brooklyn, NY 11201

MURPHY BURNS LLP                               STEPHEN M. GROUDINE, ESQ.
    Counsel for County Defendants and Defendant Finn
407 Albany Shaker Road
Loundonville, NY 12211

HON. LETITIA A. JAMES                          AIMEE COWAN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
    Counsel for State Defendants
300 South State Street, Suite 300
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this civil rights action brought by Joshua Ryder ("Plaintiff") against the 19 above-captioned individuals and entities ("Defendants"), are essentially[1] the following two motions: (1) a motion filed by Columbia County District Attorney Paul Czajka, Columbia County Assistant District Attorney Ryan Carty, the Columbia County District Attorney's Office, and Columbia County ("the County Defendants"), as well as Hudson Police Detective Sergeant Jason C. Finn ("Defendant Finn"), to dismiss Plaintiff's claims against them for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); and (2) a motion filed by New York State Trooper Brennan Keeler, New York State Police Investigator Michael J. Burns, New York State Police Senior Investigator David Jimenez, and New York State Police Investigator Sean Tashjian ("the State Defendants") to dismiss Plaintiff's claims against them for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).   (Dkt. Nos. 4, 13, 18, 31, 36.) For the reasons set forth below, the motion filed by the County Defendants and Defendant Finn is granted, and the motion filed by the State Defendants is granted.

I.      **RELEVANT BACKGROUND**

        A.      **Plaintiff's Claims**

---

[1]      The motion practice in this case has been complicated by (1) the fact that three of the four State Defendants filed a motion to dismiss before the fourth State Defendant had been served (necessitating the filing of a separate motion to dismiss by that fourth State Defendant after such service), (2) the fact that Plaintiff filed an Amended Complaint after that fourth State Defendants had filed a motion to dismiss the original Complaint (necessitating the filing of supplemental briefing by all movants), and (3) the fact that one of the aforementioned supplemental briefs appeared in the form of yet another motion.   For the sake of simplicity and clarity in this

Generally, Plaintiff's Amended Complaint alleges that Defendants committed various forms of misconduct between his arrest for a felony and misdemeanor on September 7, 2021, and the termination of his employment as a welfare fraud investigator in the Columbia County Department of Social Services on November 18, 2022. (Dkt. No. 19.) More specifically, the Amended Complaint alleges as follows: on September 7, 2021, Plaintiff was detained for questioning by members of local and state law enforcement without probable cause or reasonable suspicion as part of a City of Hudson Police Department investigation of a local gang called "Men of Business" in an operation nicknamed "Men Outta Business"; on October 29, 2021, Plaintiff was arrested for, and charged with, Third Degree Criminal Sale of a Firearm and Fifth Degree Conspiracy by members of state law enforcement without probable cause or reasonable suspicion; over the course of more than one year, he was then forced to report to court for multiple appearances to defend himself against false charges; but on December 12, 2022, the Columbia County District Attorney's Office admitted to having no good faith basis to oppose Plaintiff's motion to dismiss the criminal charges against him; and on December 16, 2022, the charges were dismissed. (*Id.*)

The Amended Complaint also alleges that, meanwhile, in response to a request pursuant to the New York State Freedom of Information Law ("FOIL") dated September 14, 2022, the District Attorney's Office improperly disclosed the contents of Plaintiff's wiretapped text communications with a narcotics-distribution suspect (Khalid Lord) to a private lawyer (Elena DeFio-Kean, Esq.) and her law firm (Hinman Straub PC) on September 16, 2022. (*Id.*) Moreover, the Amended Complaint alleges that Ms. DeFio then sent the text communications to

---

Decision and Order, the Court has combined all motions, and briefs, into two sets: one by the County Defendants and Defendant Finn, and one by the State Defendants.

the Columbia County Attorney (Rob Fitzsimmons, Esq.) on October 18, 2022, nine days after which Plaintiff was placed on administrative leave by a member of the County Human Resources Department (April DeLaurentis) and then one week later was improperly given an ultimatum by another member of the County Human Resources Department (Michaele Williams-Riordan): either voluntarily resign or contest his termination (and right to receive unemployment compensation) at a hearing.   (*Id.*)   Finally, the Amended Complaint alleges that, under coercion, Plaintiff resigned on November 18, 2022.   (*Id.*)

Generally, based on these factual allegations, the Amended Complaint asserts five claims: (1) a claim of unlawful disclosure and use of eavesdropping information pursuant to 18 U.S.C. §§ 2517 and 2520(g) against the County Defendants and John Does #1-10 ("First Claim");[2] (2) a claim of false arrest and false imprisonment pursuant to the Fourth Amendment and 42 U.S.C. § 1983 against Detective Finn and the State Defendants ("Second Claim"); (3) a claim of malicious prosecution pursuant to 42 U.S.C. § 1983 against Detective Finn and the State Defendants ("Third Claim"); (4) a claim of deprivation of the right to a fair trial pursuant to 42 U.S.C. § 1983 against Detective Finn and the State Defendants ("Fourth Claim"); and (5) a claim

---

[2]       The Court notes that the Amended Complaint does *not* claim that this disclosure violated FOIL.  (*See generally* Dkt. No. 19, at ¶¶ 39, 40, 41, 50-57, 73-78.)   Nor does the Amended Complaint claim that the text communications were obtained without a warrant or through entrapment, or were in any way distorted.  (*Id.* at ¶¶ 5, 8, 25, 27, 38, 40, 43, 50-57, 77.)   Nor does the Amended Complaint allege or claim that the text communications were sealed at the time of disclosure.  (*Id.* at ¶¶ 8, 40, 43, 50-57, 77; *compare* Dkt. No. 31, Attach. 4, at 10 [attaching page "8" of Defs.' Suppl. Memo. of Law, asserting the materials were unsealed] *with* Dkt. No. 37 [Plf.'s Reply Memo. of Law, failing to deny that assertion].)   Rather, the Amended Complaint claims that Ms. DeFio-Kean and Hinman Straub were "prohibited recipients" under 18 U.S.C. § 2517.  (*Id.* at ¶¶ 39-40, 52.)   Finally, to help establish the timeliness of this claim, the Amended Complaint (dated November 14, 2023) claims that less than two years have elapsed since May 13, 2022, when Defendant Czajka gave Plaintiff notice of the eavesdropping warrant (although that notice had been due 90 days after the August 9, 2021, expiration of the warrant, under state law).  (*Id.* at ¶¶ 27, 57.)

of tortious interference with contractual relations against Defendants Czajka and Carty and the Office of the Columbia County District Attorney ("Fifth Claim").   (*Id*.)

B.    **Parties' Briefing on Defendants' Motions to Dismiss**

1.    **Motion Filed by the County Defendants and Defendant Finn**

a.    **Moving Defendants' Memoranda of Law-in Chief**

Generally, in their memoranda of law-in chief, the County Defendants and Defendant Finn assert the following six arguments.   (Dkt. No. 4, Attach. 3; Dkt. No. 31, Attach. 4.)   First, the moving Defendants argue, Plaintiff's First and Fifth Claims against Defendant Columbia County District Attorney's Office must be dismissed, because that Office lacks any legal existence distinct from the District Attorney, and thus is not an entity capable of being sued. (*Id*.)

Second, the moving Defendants argue, Plaintiff's First and Fifth Claims against Defendant Czajka must be dismissed for numerous alternative reasons.   (*Id*.)   More specifically, Defendants argue, Plaintiff's First Claim against Defendant Czajka must be dismissed for two reasons: (a) to the extent that Plaintiff's First Claim may be construed as alleging that Defendant Czajka disclosed the material in question as part of his prosecution of Plaintiff (which appears to be the case from the timing of the purported pre-dismissal disclosure to a County official performing an investigation for the County), the claim must be dismissed, because it alleges that Defendant Czajka was acting in his prosecutorial capacity, and thus he is absolutely immune from prosecution under the Eleventh Amendment (regardless of whether that claim is asserted against Defendant Czajka in his official capacity or his individual capacity, and regardless of whether the Amended Complaint alleges that Defendant Czajka conspired with others to deprive

Plaintiff of his rights, because the immunity attaches to Defendant Czajka's function, not the manner in which he performed it); and (b) to the extent that Plaintiff's First Claim may be construed as alleging that Defendant Czajka acted in an administrative capacity, the claim is not actionable, because the claim would be alleging that he acted as an agent of the County (not State), and the Amended Complaint fails to allege facts plausibly suggesting that there has been a disclosure to anyone other than County officials and/or employees so as to satisfy the third-party requirement of 18 U.S.C. § 2520 (which is especially true given the Amended Complaint's nefailure to allege facts plausibly suggesting that Defendant Czajka personally acted, much less acted willfully and unlawfully).   (*Id*.)

Similarly, Defendants argue, Plaintiff's Fifth Claim against Defendant Czajka must be dismissed for four reasons: (a) the Amended Complaint fails to allege facts plausibly suggesting either the relevant terms of the contract that were breached or Defendant Czajka's knowledge of that contract; (b) in any event, the Amended Complaint fails to allege facts plausibly suggesting that the contract in question was with a third party, because Plaintiff's employment contract was allegedly with the County, which employed Defendant Czajka; (c) in any event, the Amended Complaint fails to allege facts plausibly suggesting that the contract in question was breached by that third party, only that his contractual relationship with the third party was "injured" when that third party coerced him to resign (as alleged in Paragraph 78 of the Amended Complaint); and (d) in any event, Plaintiff's Notice of Claim (the filing of which is required to bring this supplemental state law claim) did not reveal a theory of liability premised on a claim of tortious interference with contract.   (*Id*.)

Third, the moving Defendants argue, Plaintiff's First and Fifth Claims against Defendant Carty must be dismissed for reasons similar to those that his First and Fifth Claims against Defendant Czajka must be dismissed (which are stated in the preceding two paragraphs).   (*Id.*) To those reasons, the moving Defendants add that, to the extent that Plaintiff's First Claim may be construed as alleging that Defendant Carty acted in an administrative capacity, the claim must be dismissed for the alternative reason that the Amended Complaint alleges only a proper FOIL disclosure of unsealed material by one County agent to another County agent who was conducting an investigation on behalf of the County, as permitted by 18 U.S.C. § 2517(1),(2). (*Id.*)

Fourth, the moving Defendants argue, in the alternative, Plaintiff's First and Fifth Claims against the Defendants Columbia County, Czajka, and Carty must be dismissed for two reasons: (a) on November 17, 2022, Plaintiff knowingly, and with the representation of his labor union, executed a Stipulation of Settlement Agreement which, in pertinent part, released and discharged the "COUNTY OF COLUMBIA, . . . [its] officials, . . . [and its] employees . . . from all actions, causes of actions, suits, . . . [and] contractual benefits pursuant to any collective bargaining agreements . . . arising out of [Plaintiff's] employment by the County . . ."; and (b) although Plaintiff did not explicitly incorporate the Settlement Agreement into his Amended Complaint, the Court may nonetheless consider it on the moving Defendants' motion to dismiss because it is integral to the Amended Complaint, authentic, accurate and relevant.   (*Id.*)

Fifth, the moving Defendants argue, Plaintiff's Second, Third and Fourth Claims against Defendant Finn must be dismissed, because Plaintiff has failed to allege facts plausibly suggesting the personal involvement and direct intentional participation of Finn in the

constitutional violations alleged for the following reasons: (a) Plaintiff acknowledges that it was not Finn but Defendant Keeler who arrested him; (b) Plaintiff acknowledges that it was not Finn but Defendant Burns who commenced the criminal prosecution against him; and (c) Plaintiff does not even allege that Finn was present at Plaintiff's arrest by state police, such that Finn could have intervened in that arrest.  (*Id*.)

Sixth, the moving Defendants argue, to the extent that Plaintiff's claims for punitive damages against Defendant Columbia County District Attorney's Office and Defendants Czajka and Carty in their official capacity survive the above-stated arguments, those claims must be stricken, because it is clearly established that no claim for punitive damages lies against a governmental entity.  (*Id*.)

### b.    **Plaintiff's Opposition Memorandum of Law**

Generally, in his opposition memorandum of law, Plaintiff asserts the following five arguments.  (Dkt. No. 37.)   First, Plaintiff argues, his First Claim against Defendant Columbia County District Attorney's Office is actionable for the following reasons: (a) the claim is permitted by the plain language of 18 U.S.C. § 2520(a), which provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate"; and (b) in *Organizacion JD Ltda. v U.S. Department of Justice*, 18 F.3d 91 (2d Cir 1994), the Second Circuit concluded that governmental entities (such as a district attorney's office) are potentially liable under similar language in a related stored communications statute, 18 U.S.C. § 2707 (which provides that "any . . . person aggrieved by any violation of this chapter . . . may, in a

civil action, recover from the person or entity, other than the United States, which engaged in

that violation such relief as may be appropriate").   (*Id.*)

Second, Plaintiff argues, his First and Fifth Claims against Defendant Czajka are

actionable for numerous reasons.   (*Id.*)   More specifically, Plaintiff argues, his First Claim

against Defendant Czajka is actionable, because Czajka is not absolutely immune from liability

given that he was not acting as an officer of the court when he allegedly disclosed the

eavesdropped materials but was simply responding to a FOIL request by a private lawyer (as

alleged in Paragraphs 39-41 of the Amended Complaint).   (*Id.*)

Similarly, Plaintiff argues, his Fifth Claim against Defendant Czajka is actionable for the

following reasons: (a) Paragraph 74 of the Amended Complaint alleges facts plausibly

suggesting the relevant term of the collective bargaining agreement that was breached (i.e., the

provision regarding Plaintiff's continuing employment with the County); (b) the Amended

Complaint alleges facts plausibly suggesting that the contract in question was with a third party,

because Defendant Columbia County District Attorney's Office is not an administrative arm of

Columbia County; (c) although the Amended Complaint does not use the word "breach," it

alleges facts plausibly suggesting that the contract in question was breached by that third party,

by alleging that two employees of Columbia County (part of or together with the Columbia

County Human Resources Department) coerced him to resign by placing him on leave and then

telling him that, within "just a couple of days," he "must resign or contest . . . [his] termination

[at a] hearing"; and (d) the Notice of Claim sufficiently describes a theory of liability of tortious

interference with contract by stating that, under duress of the illegally disclosed intercepted

communications, he was forced to sign a contract resigning from his employment (stating all of

the elements of a claim of tortious interference with contract, and presenting information sufficient for Defendant Czajka to investigate that claim). (*Id*.)

Third, Plaintiff argues, his First and Fifth Claims against Defendant Carty are actionable for the same reasons that his his First and Fifth Claims against Defendant Czajka are actionable (which are stated in the preceding two paragraphs). (*Id.*)

Fourth, Plaintiff argues, his First and Fifth Claims against the Defendants Columbia County, Czajka, and Carty survive the Stipulation of Settlement Agreement for three reasons: (a) the Settlement Agreement is not integral to the Amended Complaint, because the moving Defendants offer no citation to the Amended Complaint showing how it relies heavily on the Settlement Agreement's terms and effect (a requirement of integration); (b) any agreement, written or otherwise, that Plaintiff shall resign and release the County from liability is void because it was obtained under duress and illegal means (as Plaintiff alleged regarding his termination in his Amended Complaint), because a choice between contesting his termination in a hearing and voluntarily resigning is no choice at all, especially when the choice was created by illegally obtained information; and (c) in any event, the Settlement Agreement does not release Defendants Czajka and Carty, because the District Attorney's Office and its employees are distinct from, and not part of, Columbia County. (*Id.*)

Fifth, Plaintiff argues, his Second, Third and Fourth Claims against Defendant Finn are actionable for the following reasons: (a) Defendant Finn's presence at Plaintiff's arrest is not a prerequisite for false arrest liability; (b) Paragraphs 21, 22, 28, 30, 59, and 63 of the Amended Complaint allege facts plausibly suggesting that, at the very least, Finn had reason to know that a false arrest of Plaintiff was likely to occur (most notably due to Finn's presence on September 7,

2021, when Plaintiff was threatened that he would suffer the consequences if he did not

cooperate in the investigation), yet he did not intervene to stop it; and (c) page 2 of the Incident

Report memorializing Plaintiff's arrest on October 29, 2021,[3] identifies the investigative team as

"SIU-21-199"), which includes Finn.   (*Id.*)

### c.    Moving Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the County Defendants and Defendant

Finn assert the following six arguments.   (Dkt. No. 40.)   First, the moving Defendants argue,

despite the fact that Defendant Columbia County District Attorney's Office is an "entity," none

of the cases cited by Plaintiff (including *Organizacion JD Ltda*) stand for the point of law that a

federal statute allows a plaintiff to sue an entity that is otherwise recognized as non-suable.   (*Id.*)

Furthermore, the moving Defendants argue, Plaintiff has also asserted these two claims against

three suable Defendants (i.e., Defendants Columbia County, District Attorney Czajka, and

Assistant District Attorney Carty), rendering the claims against Defendant Columbia County

District Attorney's Office duplicative and unnecessary.   (*Id.*)

Second, the moving Defendants argue, Plaintiff's First and Fifth Claims against

Defendant Czajka must be dismissed for numerous reasons.   (*Id.*)   More specifically,

Defendants argue, Plaintiff's First Claim against Defendant Czajka must be dismissed because,

although Plaintiff speculates (in his opposition memorandum of law) that Czajka *directed*

Defendant Carty to disclose the materials in question to the private attorney who had submitted

the FOIL request, the Amended Complaint (particularly Paragraph 41) is conspicuously devoid

---

[3]      Although Plaintiff's opposition memorandum of law refers to his arrest as occurring on
October 20, 2021, both the paragraph of the Amended Complaint that it cites and the Incident
Report itself state that his arrest occurred on October 29, 2021.   (Dkt. No. 37, at 26 [attaching
page "20" of Plf.'s Opp'n Memo. of Law]; Dkt. No. 19, at ¶ 30; Dkt. No. 19, Attach. 3, at 1.)

of any factual allegations plausibly suggesting that Czajka *directed* Carty to do so: it merely

contains an allegation (in Paragraph 39) that the attorney *addressed* her FOIL request to Czajka,

which is insufficient.   (*Id*.)

Similarly, the moving Defendants argue, Plaintiff's Fifth Claim against Defendant Czajka

must be dismissed because, despite Plaintiff's argument to the contrary, his Amended Complaint

fails to alleges key elements of a claim of tortious interference with contract, and that his Notice

of Claim does not give faire notice of such a claim.   (*Id*.)   More specifically, Defendants argue

as follows: (a) in addition to failing to allege that Plaintiff was a party to the collective

bargaining agreement he references, the Amended Complaint fails to allege facts plausibly

suggesting that a term of the collective bargaining agreement that protects Plaintiff's right to

continued employment under the circumstances alleged (i.e., when the options were a

disciplinary hearing or voluntary resignation); (b) the fact that Defendant Columbia County

District Attorney's Office is distinct in certain respects from Defendant Columbia (particularly in

its role as a prosecutor for the state) County does not render it a third party, particularly where

Plaintiff alleges that Defendant Czajka was not acting as a prosecutor at the time in question (but

as an administrator, which could only be for the County); (c) Plaintiff concedes that his

Amended Complaint does not use the word "breach," and an "injur[y]" is not necessarily a

breach, particularly where, as here, the Amended Complaint alleges no specific provision of the

collective bargaining agreement that protects Plaintiff's right to continued employment under the

circumstances alleged; and (d) the Notice of Claim conspicuously fails to reference either the

existence or breach of any contract between Plaintiff and Columbia County (including but not

limited to a collective bargaining agreement), and thus it fails to sufficiently describe a theory of liability of tortious interference with contract.   (*Id*.)

Third, the moving Defendants argue, Plaintiff's First and Fifth Claims against Defendant Carty must be dismissed for each of the two alternative reasons originally stated in their supplemental memorandum of law-in-chief (which have not been successfully rebutted by Plaintiff in his opposition memorandum of law).   (*Id*.)

Fourth, the moving Defendants argue, contrary to Plaintiff's argument, his First and Fifth Claims against the Defendants Columbia County, Czajka, and Carty do not survive the Stipulation of Settlement Agreement for three reasons: (a) the Settlement Agreement is integral to the Amended Complaint, because Paragraphs 43 and 53 of the Amended Complaint expressly allege that Plaintiff's resignation was coerced, yet the Settlement Agreement clearly contradicts that allegation, and demonstrates that he had a choice to either voluntarily resign or face a disciplinary hearing pursuant to Civil Service Law Section 75 and Article XI of the Collective Bargaining Agreement (showing the consideration that Plaintiff received in exchange for his voluntary resignation, as well as the negotiation and circumstances of that resignation); (b) the Settlement Agreement cannot be void due to duress, because Paragraph 15 states that "[e]ach party enters into this Agreement of their own free will and have not been coerced into doing so," any allegations to the contrary in Plaintiff's Amended Complaint are conclusory, and a disciplinary hearing pursuant to the Civil Service Law and Collective Bargaining Agreement was a lawful next step under the circumstances; and (c) not only does the Settlement Agree release Columbia County from liability but it releases Defendants Czajka and Carty (as County officials and/or employees) as well.   (*Id*.)

13

Fifth, the moving Defendants argue, contrary to Plaintiff's argument, his Amended Complaint does not allege facts plausibly suggesting, but offers mere speculation, that Defendant Finn reasonably should have known that a false arrest would occur and had a reasonable opportunity to stop it.   (*Id.*)

Sixth, the moving Defendants argue, because Plaintiff's response papers do not oppose the moving Defendants' challenge to Plaintiff's claims for punitive damages against Defendant Columbia County District Attorney's Office and Defendants Czajka and Carty in their official capacity, he has conceded the merit of that challenge, and those claims must be dismissed.   (*Id.*)

### 2.    Motion Filed by the State Defendants

#### a.    State Defendants' Memoranda of Law-in Chief

Generally, in their memoranda of law-in chief, the State Defendants assert two arguments.   (Dkt. No. 13, Attach. 1; Dkt. No. 18, Attach. 1; Dkt. No. 36.)

First, the State Defendants argue, Plaintiff's Second, Third, and Fourth Claims against them must be dismissed for lack of personal involvement in the constitutional violations alleged for the following reasons: (a) the Amended Complaint fails to allege facts plausibly suggesting that Defendant Keeler created, relied on, or forwarded any "false" information giving rise to a false arrest, malicious prosecution, or deprivation of the right to a fair trial, only that Keeler received advice from Defendant Burns regarding the case against Plaintiff, and then arrested Plaintiff "at the behest of Defendants Finn, Burns and Tashjian"; (b) the Amended Complaint fails to allege facts plausibly suggesting that Defendant Burns created, relied on, or forwarded any "false" information giving rise to a false arrest, malicious prosecution, or deprivation of the right to a fair trial, only that Burns questioned Plaintiff on September 7, 2021, advised Defendant

14

Keeler regarding the case against Plaintiff, commanded or urgently asked Keeler to arrest Plaintiff on October 29, 2021, and then wrote and signed criminal charging documents against Plaintiff on or about October 29, 2021; (c) the Amended Complaint fails to allege facts plausibly suggesting that Defendant Tashjian created, relied on, or forwarded any "false" information giving rise to a false arrest, malicious prosecution, or deprivation of the right to a fair trial, only that Tashjian questioned Plaintiff on September 7, 2021, and commanded or urgently asked Defendant Keeler to arrest Plaintiff on October 29, 2021; and (d) the Amended Complaint fails to allege facts plausibly suggesting that Defendant Jimenez created, relied on, or forwarded any "false" information giving rise to a false arrest, malicious prosecution, or deprivation of the right to a fair trial, only that Jimenez "was the supervisor who signed off on Defendant Keeler's arrest paperwork."   (*Id.*)

Second, the State Defendants argue, in the alternative, Plaintiff's Second, Third, and Fourth Claims against Defendant Jimenez (a supervisor) must be dismissed for lack of personal involvement in the constitutional violations alleged for the following reasons: (a) the Amended Complaint fails to allege facts plausibly suggesting that Defendant Jimenez violated the Constitution "through [his] own individual actions," as required by *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020); and (b) an alleged failure to supervise an offending subordinate, and/or signing off on an offending subordinate's arrest paperwork, are insufficient to establish such personal involvement.   (*Id.*)

### b.      Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff argues that he has sufficiently alleged the personal involvement of the State Defendants in the alleged constitutional violations

for the following reasons: (a) rather than contest whether the elements of Plaintiff's Second, Third and Fourth Claims have been plausibly pled, the State Defendants argue only that they were not personally involved in the alleged violations; (b) the personal involvement of Defendant Keeler is plausibly suggested by the factual allegations that he received advice from Defendant Burns regarding the case against Plaintiff, arrested Plaintiff "at the behest of Defendants Finn, Burns and Tashjian," and then "processed" Plaintiff at the Police Barracks with his attorney (as indicated in the Incident Report); (c) the personal involvement of Defendant Burns is plausibly suggested by the factual allegations that Burns was a member of the "Men Outta Business" investigative team, threateningly questioned Plaintiff on September 7, 2021, advised Defendant Keeler regarding the case against Plaintiff, commanded or urgently asked Keeler to arrest Plaintiff on October 29, 2021, and then wrote and signed criminal charging documents against Plaintiff on or about October 29, 2021; (d) the personal involvement of Defendant Tashjian is plausibly suggested by the factual allegations that Tashjian was a member of the "Men Outta Business" investigative team, threateningly questioned Plaintiff on September 7, 2021, commanded or urgently asked Defendant Keeler to arrest Plaintiff on October 29, 2021, and signed the arrest-process Incident Report (as the reporting officer); (e) the personal ineinvolvement of Defendant Tashjian is plausibly suggested by the factual allegations that Jimenez was a member of the "Men Outta Business" investigative team, and "was the supervisor who signed off on Defendant Keeler's arrest paperwork;" and (f) to the extent that each of the State Defendants did not directly take action that gave rise to Plaintiff's Second, Third and Fourth Claims, Plaintiff's Amended Complaint alleges facts plausibly suggesting that those State Defendants are liable for failing to intervene in that directly taken action.   (Dkt. No. 38.)

### c.    State Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the State Defendants assert the following three arguments:   (a) contrary to Plaintiff's argument that the State Defendants have not contested whether the elements Plaintiff's Second, Third and Fourth Claims have been plausibly pled, the State Defendants have contested those elements, particularly all elements requiring that the any "false" information, "illegality" or "malicious" motivation were associated with Plaintiff's arrest, prosecution and trial; (b) in any event, the personal involvement of the State Defendants has not been plausibly suggested by the facts alleged in the Amended Complaint, and indeed one of the cases relied on by Plaintiff (*Pittman v. City of New York*, 14-CV-4140, 2014 WL 7399308, at *10 [E.D.N.Y. Dec. 30, 2014]), actually found a *failure* to plead personal involvement; (c) Plaintiff's arguments with regard to Defendant Jimenez disregard the individual action required by *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); and (d) Plaintiff's failure-to-intervene claims are precluded by his failure to allege facts plausibly suggesting any underlying constitutional violations.   (Dkt. No. 41.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).   Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.   *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).   A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.   *Makarova*, 201 F.3d at 113.   The plaintiff

bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).   When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.   *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).   Finally, generally, a dismissal for lack of subject-matter jurisdiction must be without prejudice (because the Court lacks jurisdiction to pass on the merits of the claims asserted). *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("One other wrinkle: when a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.'").

    **B.**     **Motion to Dismiss for Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.   *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on de novo review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2) [emphasis added].   In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

18

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F. Supp.2d at 212, n.20 (citing Supreme Court case).   On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[4]

The Supreme Court has explained that such fair notice has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.   *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).   For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."   2 Moore's Federal Practice § 12.34[1][b] at 12-61 (3d ed. 2003).   For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.   *Rusyniak*, 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15

19

U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).    In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief."    *Twombly*, 127 S. Ct. at 1968-69.    Rather than turn on the conceivability of an

actionable claim, the Court clarified, the "fair notice" standard turns on the plausibility of an

actionable claim.    *Id.* at 1965-74.    The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]."    *Id*. at 1965.    More specifically, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a

plausible level]," assuming (of course) that all the allegations in the complaint are true.    *Id*.

　　　　As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."    *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).    "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .    [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief."    *Iqbal,* 129 S. Ct. at 1950 [internal quotation

marks and citations omitted].    However, while the plausibility standard "asks for more than a

---

4        *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v.*
*Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine*
*Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S. Ct. at 1949   (internal citations and alterations omitted).   Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.   Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[5]

---

[5]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by

III.    ANALYSIS

    A.    Motion Filed by the County Defendants and Defendant Finn

        1.    Whether Plaintiff's First and Fifth Claims Against Defendant
Columbia County District Attorney's Office Must Be Dismissed

            a.    First Claim

As an initial matter, the Court will not squarely rely on the cases cited by the moving

Defendants regarding this claim because they all arise under 42 U.S.C. § 1983, which (unlike 18

U.S.C. § 2520) is expressly limited to claims against a "person."   *See* 42 U.S.C. § 1983

(providing, in pertinent part, that "[e]very person . . . shall be liable . . .").   However, the Court

does rely on the point repeatedly made in those cases regarding sovereign immunity: even if

Defendant Columbia County District Attorney's Office could be sued, such suit would be barred

by the Eleventh Amendment, because, "[w]hen prosecuting a criminal matter, a district attorney

in New York State, acting in a quasi-judicial capacity, represents the State not the county."

---

the parties), [3] documents that, although not incorporated by reference, are "integral" to the
complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint. . . .   Where a document is not
incorporated by reference, the court may nevertheless consider it where the complaint relies heavily
upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.   It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
e[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d
Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an
exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]

*Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir.1988); *see, e.g., Bryan v. New York*, 14-CV-8305, 2015 WL 4272054, at *3 (S.D.N.Y. July 13, 2015) ("Even if the DA's Office could be sued, such claims would be barred by the Eleventh Amendment. District attorneys' offices enjoy the State's sovereign immunity because New York district attorneys acting in a quasi-judicial capacity[] represent the State not the county, . . . and the office does not have a legal existence separate from the District Attorney himself . . . .") (internal quotation marks and citations omitted).[6]

To the extent that Plaintiff argues that he is asserting this claim against Defendant Columbia County District Attorney's Office in its administrative capacity, the claim is not actionable for three alternative reasons: (a) by alleging facts plausibly suggesting that the material in question was disclosed before dismissal to an agent of the County who was performing an investigation, the Amended Complaint alleges that Defendant Office disclosed it not in its administrative capacity but as part of a function that was intimately associated with a prosecutor's function as an advocate; (b) in any event, even if the Amended Complaint could be construed as alleging that Defendant Office was acting in an administrative capacity, it fails to allege facts plausibly suggesting that there has been a disclosure by a County entity[7] to anyone other than another County official and/or employee (but rather alleges only a disclosure by a

_____

defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[6]    The Court notes that the Second Circuit decision cited by Plaintiff–*Organizacion JD Ltda. v U.S. Department of Justice*, 18 F.3d 91 (2d Cir 1994)–did not regard district attorney's offices (much less a claim under 18 U.S.C. § 2520).

[7]    *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("With respect, however, to claims centering not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned.").

County entity to an attorney and law firm known to have "represented Columbia County in the past," who then confirmed a reasonable expectation that they were acting as County employees and/or agents by promptly disclosing the material to "the County Attorney for Columbia County," *see* Dkt. No. 19, at ¶¶ 39, 42); and (c) in any event, the Amended Complaint fails to identify any of the offending members of that Office (other than Defendants Czajka and Carty, who have already been sued for allegedly acting in their administrative capacities), raising the issue of the Office's lack of involvement in the violation alleged.

Similarly, to the extent that Plaintiff argues that he is (somehow) asserting this claim against Defendant Columbia County District Attorney's Office in its individual capacity, the claim would not be actionable for two alternative reasons: (a) absolutely immunity would still protect Defendant Office from liability, because the immunity attaches to Defendant Office's function, not the manner in which it performed that function; and (b) in any event, the Amended Complaint fails to identify any of the offending members of that Office (other than Defendants Czajka and Carty, who have already been sued in their individual capacities), raising the issue of the Office's lack of involvement in the violation alleged.

Furthermore, to the extent Plaintiff argues that Congress abrogated states' Eleventh Amendment immunity for liability under the federal Wiretap Act because the term "entity" in 18 U.S.C. § 2520 includes states, this Court has not been persuaded of that fact.   As the Supreme Court has repeatedly explained, Congress must make its intention "unmistakably clear in the language of the statute."   *See, e.g., Hoffman v. Conn. Dep't of Income Maintenance*, 492 U.S. 96, 101 (1989).   Here, the Court can find no unmistakably clear intention.   For the sake of brevity, the Court will not linger on the fact that the effect of the term "entities" on *states*

appears diluted by the term's inclusion of *municipal* entities.   More important is the fact that §
2520(a) provides only a cause of action to vindicate rights identified in other portions of the
federal Wiretap Act (many of which limit liability to "person[s]," "officer[s]," or "official[s]").

      Relatedly, and as an alternative basis for the Court's ruling, the Court relies on the
Seventh Circuit's reasoning in *Seitz v. City of Elgin*: even though "entity" as used in 18 U.S.C. §
2520 includes government units, § 2520 does not provide a cause of action against such units
because § 2520 itself creates no substantive rights; rather, § 2520 provides only a cause of action
to vindicate rights identified in other portions of the federal Wiretap Act, specifically
communications "intercepted, disclosed, or intentionally used in violation of this chapter."   *Seitz
v. City of Elgin*, 719 F.3d 654, 657 (7th Cir. 2013).   Here, the particular violation of this chapter
alleged by Plaintiff is 18 U.S.C. § 2517.   (Dkt. No. 19, at ¶ 54.)   However, § 2517 protects
against only actions taken by a "person," "officer," or "official," not actions taken by an "office"
or "entity."   18 U.S.C. § 2517.   Because § 2520 creates a cause of action only for "violation[s]
of" the federal Wiretap Act, it necessarily follows that § 2520 confers a cause of action to
enforce § 2517 only against a "person," "officer," or "official" referenced in that section.   *Cf.
Seitz*, 719 F.3d at 658 ("Only a 'person' can violate § 2511(1). And because § 2520 creates a
cause of action only for 'violation[s] of' the FWA, it necessarily follows that § 2520 confers a
cause of action to enforce § 2511(1) only against persons as defined by the statute.").   As a
result, as the Seventh Circuit found in *Seitz*, the Court finds that "nothing in the 1986
amendments altered the scope of the substantive violation [alleged in this action] by expanding it
beyond 'persons' as defined in the [federal Wiretap Act]."   *Seitz*, 719 F.3d at 658.

The Court adds that no part of its above-stated analysis is changed by 18 U.S.C. §
2520(g), which provides that "[a]ny willful disclosure or use by an investigative or law
enforcement officer or governmental entity of information beyond the extent permitted by
section 2517 is a violation of this chapter for purposes of section 2520(a)."   This is because §
2517 does not proscribe (and thus effectively   "permits") disclosures and uses by governmental
"offices" or "entities," proscribing only disclosures and uses by "person[s]," "officer[s]," and
"official[s]."   18 U.S.C. § 2517.

For each of these two alternative reasons, the Court dismisses Plaintiff's First Claim
against Defendant Columbia County District Attorney's Office.

### b.    Fifth Claim

With regard to Plaintiff's Fifth Claim against Defendant Columbia County District
Attorney's Office, the Court dismisses that claim for three alternative reasons.

First, the Court relies on the fact that Plaintiff's opposition memorandum of law does not
appear to oppose the moving Defendants' challenge to this state law claim against Defendant
Office (focusing only on Plaintiff's federal claim against Defendant Office).   (*See generally*
Dkt. No. 37, at 8-9 [attaching pages "2" and "3" of Plf.'s Opp'n Memo. of Law].)   In this
District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's
burden with regard to that argument is lightened, such that, in order to succeed on that argument,
the movant need only show that the argument possess facial merit, which has appropriately been
characterized as a "modest" burden.   *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed
motion is unopposed and the Court determines that the moving party has met to demonstrate
entitlement to the relief requested therein, the non-moving party's failure to file or serve any

papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).   Here, the moving Defendants have met their modest burden.[8]

Second, even if the Court were to subject Defendant Office's arguments regarding this claim to the heightened scrutiny appropriate for a contested motion, the Court would and does find that those arguments survive that scrutiny.   Specifically, the Court finds that Defendant Office is protected from liability on this claim by sovereign immunity under the Eleventh Amendment for the reasons as stated above in Part III.A.1.a. of this Decision and Order.

Third, in the alternative, the Court would and does find that this claim suffers from the defects identified by the moving Defendants in their reply memorandum of law: (a) in addition to failing to allege that Plaintiff was a party to the collective bargaining agreement he references, the Amended Complaint fails to allege facts plausibly suggesting that a term of the collective bargaining agreement protects Plaintiff's right to continued employment under the circumstances alleged (e.g., the right against having to choose between voluntary resignation or a disciplinary hearing upon the County's receipt of incriminating evidence and/or learning of the imminent

---

[8]    Alternatively, the Court can, and does, deem the challenged claim abandoned (regardless of the facial merit of the unresponded-to argument).   *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197-98 (2d Cir. 2014) ("Where a partial response to a motion is made–i.e., referencing some claims or defenses but not others–a distinction between *pro se* and counseled responses is appropriate. In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned. In all cases in which summary judgment is granted, the district court must provide an explanation

filing of a criminal charge);[9] (b) the fact that Defendant Columbia County District Attorney's Office is distinct in certain respects from Defendant Columbia County (particularly in its role as a prosecutor for the state) does not render it a third party, particularly where Plaintiff alleges that Defendant Office was not acting as a prosecutor at the time in question (but as an administrator, which could only be for the County);[10] (c) Plaintiff concedes that his Amended Complaint does not use the word "breach," and an "injur[y]" is not necessarily a breach, particularly where, as here, the Amended Complaint alleges no specific provision of the collective bargaining agreement that protects Plaintiff's right to continued employment under the circumstances alleged; and (d) the Notice of Claim conspicuously fails to reference either the existence or breach of any contract between Plaintiff and Columbia County (including but not limited to a collective bargaining agreement), much less the contract term that was breached, and thus it fails to sufficiently describe a theory of liability of tortious interference with contract.[11]  *See, supra,* Part I.B.1.c. of this Decision and Order.

---

sufficient to allow appellate review. This explanation should, where appropriate, include a finding of abandonment of undefended claims or defenses.").

[9]    *See Wolff v. Rare Medium, Inc.*, 210 F. Supp.2d 490, 499 (S.D.N.Y. 2002) (dismissing claim of tortious interference with contractual relations, because "the Amended Complaint fails to identify the exact terms breached as a result of [defendant's] acts"), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).   (*See also* Dkt. No. 4, Attach. 3, at 9 [attaching page "8" of Moving Defs.' Memo. of Law, citing cases].)

[10]    *Cf. Perros v. Cnty. of Nassau*, 238 F. Supp.3d 395, 403 (E.D.N.Y. 2017) (dismissing claim of tortious interference with prospective economic advantage by county employees against county entities and officials, because plaintiffs alleged they had "a business relationship" with defendants, and "[a] claim of tortious interference requires a business relationship with a third party, not the defendant").   (*See also* Dkt. No. 4, Attach. 3, at 9-10 [attaching pages "8" and "9" of Moving Defs.' Memo. of Law, citing cases].)

[11]    (*See* Dkt. No. 4, Attach. 3, at 11 [attaching page "10" of Moving Defs.' Memo. of Law, citing cases].)

For each of these three alternative reasons, the Court dismisses Plaintiff's Fifth Claim against Defendant Columbia County District Attorney's Office.

　　　　2.　　**Whether Plaintiff's First and Fifth Claims Against Defendant Czajka Must Be Dismissed**
　　　　　　a.　　**First Claim**

After carefully considering the matter, the Court dismisses this claim for each of the two alternative reasons offered by the moving Defendants. *See, supra,* Parts I.B.1.a. and I.B.1.c. of this Decision and Order.

First, to the extent that Plaintiff's First Claim may be construed as alleging that Defendant Czajka disclosed the material in question as part of a prosecutor's function as an advocate (which appears to be the case from the timing of the alleged pre-dismissal disclosure to an agent of the County who was performing an investigation for the County), the claim must be dismissed, because it alleges that Defendant Czajka was acting in his prosecutorial capacity, and thus he is absolutely immune from prosecution under the Eleventh Amendment (regardless of whether that claim is asserted against Defendant Czajka in his official capacity or his individual capacity, and regardless of whether the Amended Complaint alleges that Defendant Czajka conspired with others to deprive Plaintiff of his rights, because the immunity attaches to Defendant Czajka's function, not the manner in which he performed it). *Id.*

Moreover, to the extent that Plaintiff's First Claim may be construed as alleging that Defendant Czajka acted in an administrative capacity, the claim is not actionable, because the claim would be alleging that he acted as an agent of the County (not the State),[12] and the Amended Complaint fails to allege facts plausibly suggesting that there has been a disclosure to

anyone other than by a County official to another County official and/or employee; rather, Paragraphs 39 and 42 of the Amended Complaint allege only a disclosure to an attorney and law firm known to have "represented Columbia County in the past," who then confirmed a reasonable expectation that they were acting as County employees and/or agents by promptly disclosing the material to "the County Attorney for Columbia County." *Id.*

Second, even if the Amended Complaint has alleged facts plausibly suggesting a disclosure to a third party for purposes of 18 U.S.C. § 2520, the Court agrees with Defendants that Plaintiff's First Claim against Defendant Czajka must be dismissed because, although Plaintiff speculates (in his opposition memorandum of law) that Czajka directed Defendant Carty to disclose the materials in question to the private attorney who had submitted the FOIL request, the Amended Complaint (particularly Paragraph 41) is conspicuously devoid of any factual allegations plausibly suggesting that Czajka *directed* Carty to do so: it merely contains an allegation (in Paragraph 39) that the attorney addressed her FOIL request to Czajka, which is insufficient. *Id.* Such an allegation is not enough to plausibly suggest Defendant Czajka's personal involvement in the violation alleged. In rending this finding, the Court relies on analogous Section 1983 cases in which prison superintendents have been found not personally liable where letters of complaint were addressed to them but then acted on by subordinates.[13]

---

12     *See Ying Jing Gan*, 996 F.2d at 536 (recognizing that, to the extent that a district attorney makes decisions on the administration of the district attorney's office, the district attorney is to be treated an official of the municipality to which he is assigned).

13     *See, e.g., Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (finding that a Department of Corrections Commissioner was not personally involved in alleged constitutional violation where he forwarded plaintiff's letter of complaint to a staff member for decision, and he responded to plaintiff's letter inquiring as to status of matter); *accord, Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013); *Swindell v. Supple*, 02-CV-3182, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3, 2005) ("[A]ny referral by Goord of letters received from [plaintiff] to a representative who, in turn, responded, without more, does not establish personal involvement."); *Garvin v.*

This is especially true where, as here, there is no factual allegation plausibly suggesting that Defendant Czajka even read Ms. Elena DeFio-Kean's letter.[14]

For each of these two alternative reasons, the Court dismisses Plaintiff's First Claim against Defendant Czajka.

### b.    Fifth Claim

After carefully considering the matter, the Court dismisses this claim for each of the following four alternative reasons offered by the moving Defendants in their reply memorandum of law: (1) in addition to failing to allege that Plaintiff was a party to the collective bargaining agreement he references, the Amended Complaint fails to allege facts plausibly suggesting that a term of the collective bargaining agreement that protects Plaintiff's right to continued employment under the circumstances alleged (i.e., when the options were a disciplinary hearing or voluntary resignation); (2) the fact that Defendant Columbia County District Attorney's Office is distinct in certain respects from Defendant Columbia County (particularly in its role as a prosecutor for the state) does not render it a third party, particularly where Plaintiff alleges that Defendant Office was not acting as a prosecutor at the time in question (but as an administrator, which could only be for the County); (3) Plaintiff concedes that his Amended Complaint does not use the word "breach," and an "injur[y]" is not necessarily a breach, particularly where, as here, the Amended Complaint alleges no specific provision of the collective bargaining

---

*Goord*, 212 F. Supp.2d 123, 126 (W.D.N.Y. 2002) ("[W]here a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a § 1983 cause of action.").

[14]    *Cf. Brown v. Goord*, 04-CV-0785, 2007 WL 607396, at *6 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J., on de novo review) ("[T]here is no evidence in the record that Defendant Goord ever read any of the three letters sent to him by Plaintiff concerning the events of October of 2003, sufficient to give him knowledge that any policy or custom violated the constitution.").

agreement that protects Plaintiff's right to continued employment under the circumstances alleged; and (4) the Notice of Claim conspicuously fails to reference either the existence or breach of any contract between Plaintiff and Columbia County (including but not limited to a collective bargaining agreement), and thus it fails to sufficiently describe a theory of liability of tortious interference with contract. *See, supra,* Part I.B.1.c. of this Decision and Order.

For each of these four alternative reasons, the Court dismisses Plaintiff's Fifth Claim against Defendant Czajka.

### 3. Whether Plaintiff's First and Fifth Claims Against Defendant Carty Must Be Dismissed

#### a. First Claim

After carefully considering the matter, the Court dismisses this claim for the reasons offered by the moving Defendants. *See, supra,* Parts I.B.1.a. and I.B.1.c. of this Decision and Order.

More specifically, to the extent that Plaintiff's First Claim may be construed as alleging that Defendant Carty disclosed the material in question as part of a prosecutor's function as an advocate (which appears to be the case from the timing of the alleged pre-dismissal disclosure to an agent of the County who was performing an investigation for the County), the claim must be dismissed, because it alleges that Defendant Carty was acting in his prosecutorial capacity, and thus he is absolutely immune from prosecution under the Eleventh Amendment (regardless of whether the claim is brought against him in his official or individual capacity, and regardles of whether the claim alleges he conspired with others to deprive Plaintiff of his rights). *Id.*

Meanwhile, to the extent that Plaintiff's First Claim may be construed as alleging that Defendant Carty acted in an administrative capacity, the claim is not actionable for each of two

alternative reasons: (1) that claim does not allege the existence of a third-party disclosure as required by 18 U.S.C. § 2520 (but only a disclosure by one agent of the County[15] to another known agent of the County[16]); and (2) in any event, the Amended Complaint alleges only a FOIL disclosure by one "investigative or law enforcement officer" who was "proper[ly] perform[ing] . . . [his] official duties" to "another investigative or law enforcement officer" who was "proper[ly] perform[ing] . . . [her] official duties," as permitted by 18 U.S.C. § 2517(1),(2). *Id*.

For each of these reasons, the Court dismisses Plaintiff's First Claim against Defendant Carty.

### b.    Fifth Claim

---

[15]    *See Ying Jing Gan*, 996 F.2d at 536 (recognizing that, to the extent that a district attorney makes decisions on the administration of the district attorney's office, the district attorney is to be treated an official of the municipality to which he is assigned).

[16]    (*See, e.g.,* Dkt. No. 19, at ¶¶ 39, 42 [alleging, "Ms. Williams-Riordan's claim that a wiretapped communication was divulged by the District Attorney to the County of Columbia was true.   On September 14, 2022, Elena DeFio-Kean, Esq. from the Hinman Straub law firm submitted a FOIL request to 'District Attorney Paul Czajka.' . . . Ms. DeFio-Kean and Hinman Straub had represented Columbia County in the past. . . . On October 18, 2022, Ms. DeFio-Kean sent the materials to the County Attorney for Columbia County, Rob Fitzsimmons, Esq. . . . [N]ine days later, Mr. Ryder was placed on administrative leave and one week later he was told by Ms. Williams-Riordan that she had received information about the wiretap . . . ."].)   The Court notes that the obvious implication of Plaintiff including the fact that counsel had previously represented the County in the same paragraph as the fact that counsel requested the material in question, and three paragraphs before the fact that counsel then provided the material to the County, is that Defendant Czajka should have reasonably expected that counsel would give the material to the County.   But Plaintiff cannot create this implication without creating another obvious implication, which inures to his detriment: that counsel had requested the material *on behalf of* the County, as one of its agents.   Indeed, this implication is inescapable, because the only alternative implication is that counsel was not acting as an agent (e.g., on a standing instruction and/or retainer) but in the hope of soliciting future business from a former client, which is simply implausible under the circumstances alleged.

After carefully considering the matter, the Court dismisses this claim for the reasons

offered by the moving Defendants.   *See, supra,* Parts I.B.1.a. and I.B.1.c. of this Decision and

Order.   More specifically, the Court dismisses Plaintiff's Fifth Claim against Defendant Carty

for the same four alternative reasons that the Court dismisses Plaintiff's Fifth Claim against

Defendant Czajka.   *See, supra,* Part III.A.2.b. of this Decision and Order.

      **4.**      **Whether, in the Alternative, Plaintiff's First and Fifth Claims Against Defendants Columbia County, Czajka, and Carty Must Be Dismissed Under the Parties' Stipulation of Settlement Agreement**

After carefully considering the matter, the Court answers this question in the affirmative

for the three reasons offered by the moving Defendants.   *See, supra,* Parts I.B.1.a. and I.B.1.c. of

this Decision and Order.

First, the Court finds that the Settlement Agreement is integral to the Amended

Complaint.   The Amended Complaint expressly references Plaintiff's allegedly "coerc[ed]"

"resign[ation]" in four paragraphs.   (Dkt. No. 19, at ¶¶ 5, 43, 53, 78.)   Moreover, in a fifth

paragraph, the Amended Complaint indicates the purported basis for that alleged coercion: the

fact that, on or about November 3, 2022, Plaintiff was told that, unless he voluntarily resigned

within a couple of days, the County would hold a hearing at which (1) the record would include

the wiretapped communications that the Amended Complaint elsewhere alleges were illegally

disclosed and (2) the County would contest his right to receive unemployment compensation.

(*Id*. at ¶ 38.)   In this way, the Amended Complaint can fairly and accurately be described as

relying heavily on the terms and effect of Plaintiff's resignation on November 18, 2022.

Meanwhile, the terms and effect of Plaintiff's resignation on November 18, 2022, are

memorialized in the Stipulation of Settlement Agreement between Defendant Colombia County,

Plaintiff and his labor union dated November 17, 2022. (Dkt. No. 31, Attach. 2.) For example, among other things, the Settlement Agreement shows the following: (1) the nature of the "termination hearing" alleged in Paragraph 38 of the Amended Complaint (i.e., one arising under Section 75 of the Civil Service Law Section 75 and Article XI of the Collective Bargaining Agreement); (2) the consideration that Plaintiff received in exchange for his voluntary resignation (which included the payment of the balance of his vacation and compensatory time, the opportunity of the 2022 Health Insurance Buyout at the County Spouse election of $2,000, a neutral reference, and an agreement that the County would not contest his application for unemployment benefits); and (3) the number of days that Plaintiff was in fact given to make the choice alleged in Paragraph 38 of the Amended Complaint (i.e., approximately 14, not "a couple"). (*Id*. at 3-4, 5.) In addition, the General Release (attached to the Settlement Agreement) expressly regards "contractual benefits pursuant to any collective bargaining agreements" (*id*. at 8), undermining Plaintiff's claim that the moving Defendants interfered with an unspecified term of a collective bargaining agreement (Dkt. No. 19, at ¶¶ 74-75).[17]

Second, the Court finds that the Settlement Agreement is not void due to duress under the circumstances alleged. For the sake of brevity, the Court will not linger on the effect of Paragraphs 14 through 16 of the Settlement Agreement (which expressly regard, among other things, the fact that Plaintiff had been fully and fairly represented during negotiations, the fact

---

[17]       The Court notes that, although Plaintiff characterizes the agreement in question as a "purported" one, he does not dispute the authenticity, accuracy or relevance of the version supplied by the moving Defendants. (Dkt. No. 37, at 9-10 [pages "3" and "4" of Plf.'s Opp'n Memo. of Law].) *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted].

that Plaintiff read and understood the Agreement, and the fact that he entered into it "of [his] own free will" and was "not . . . coerced into doing so").  (Dkt. No. 31, Attach. 2, at 5.)[18]  More important is the thinness of the reed on which Plaintiff attempts to base his grave claim of coercion: his allegation that the choice referenced in Paragraph 38 was foisted upon him through the threatened use of illegally disclosed information, amidst a torrent of other factual allegations plausibly suggesting that (1) the disclosure (which was between a County agent to a County employee pursuant to a FOIL request) was lawful, (2) at least 14 days was afforded to make the choice in question, and (3) he was fully and fairly represented during negotiations.  Simply stated, enough fact has not been alleged to plausibly suggest duress regarding the Settlement Agreement under the circumstances.

Third, the Court finds that the Settlement Agreement releases from liability all three of the Defendants making this argument: Defendant Columbia County, Defendant Czajka, and Defendant Carty.  As an initial matter, Plaintiff's argument on this subject does not extend to Defendant Columbia County, only to Defendants Czajka and Carty.  (Dkt. No. 37, at 13 [attaching page "7" of Plf.'s Opp'n Memo. of Law].)  Furthermore, the Court rejects Plaintiff's argument that Defendants Czajka and Carty were not acting as County officials and/or employees under the circumstances alleged, for the reasons stated above in Part III.A.2.a. and III.A.3.a. of this Decision and Order.

For each of these reasons, the Court dismisses Plaintiff's First and Fifth Claims against Defendants County of Columbia, Czajka, and Carty on this alternative ground.

---

[18]    The Court notes that conspicuously missing from Plaintiff's Amended Complaint is any factual allegation plausibly suggesting that he was not fully and fairly represented during negotiations, or that he did not read and understand the Settlement Agreement.

**5.     Whether Plaintiff's Third, Fourth and Fifth Claims Against Defendant Finn Must Be Dismissed for Lack of Personal Involvement**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons offered by the moving Defendants. *See, supra,* Parts I.B.1.a. and I.B.1.c. of this Decision and Order. To those reasons, the Court adds the following analysis.

To establish a claim of failure to intervene against Defendant Finn, Plaintiff must prove, among other things, as follows: (1) that Finn knew, or had reason to know, that the alleged violation was occurring or was likely to occur; (2) that Finn had a reasonable opportunity to intervene and stop the violation; and (3) that Finn did not take reasonable steps to intervene. *Escalera v. Lunn*, 361 F.3d 737, 748, n.4 (2d Cir. 2004); *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988).

Here, the Court cannot find facts plausibly suggesting that Defendant Finn either knew or had reason to know that the alleged violations were likely to occur.   Neither being a member of the "Men Outta Business" investigative team nor informing Plaintiff that he would lose his job and have his pistol license revoked if he did not cooperate with that team's investigation (or being present when other investigative-team members did so) plausibly suggests that Defendant Finn knew, had reason to know, that the subsequent alleged constitutional violations were likely to occur.   (Dkt. No. 19, at ¶¶ 23, 28.)   Moreover, the Amended Complaint does not allege that Defendant Finn was present at Plaintiff's arrest by state police on October 29, 2021.   (*Id*. at ¶ 30.)   Similarly, the Amended Complaint does not allege that Defendant Finn was present when criminal charges were filed against Plaintiff by state police, or when those charges were subsequently pursued by the District Attorney's Office.   (*Id*. at ¶¶ 31, 36, 63, 70.)

Indeed, it is difficult for the Court to find that the Amended Complaint has even alleged

facts plausibly suggesting that the underlying alleged violations did in fact occur.    Just because

the charges against Plaintiff were ultimately dropped (due to a lack of a "good faith defense" to a

motion to dismiss) does not mean that his arrest was in fact false (i.e., without probable cause),

that his prosecution was in fact malicious, or that his trial was in fact unfair.    (Dkt. No. 19, at ¶¶

6, 44, 67.)[19]    Moreover, the Amended Complaint is conspicuously devoid of factual allegations

plausibly suggesting that the wiretapped text communications presumably giving rise to

Plaintiff's arrest and prosecution were obtained without a warrant or through entrapment, or were

in any way fabricated.    (*See generally* Dkt. No. 19, at ¶¶ 5, 8, 25, 27, 38, 40, 43, 50-57, 77.)[20]

The closest the Amended Complaint comes to alleging the lack of probable cause is when, in

support of his Fourth Claim (for denial of a fair trial), he alleges that "Defendants knowingly

forwarded false information to prosecutors (verbally and in written reports), that Ryder

---

[19]        *See, e.g., Warren v. Byrne,* 699 F.2d 95, 98 (2d Cir. 1983) ("Dismissal of the criminal charges against appellants likewise had no conclusive effect on the issues created by appellants' claim of malicious prosecution. Malicious prosecution is based upon a defendant's alleged lack of probable cause to believe the plaintiff guilty of the crime for which he was prosecuted; and favorable termination has no bearing whatever in and of itself on want of probable cause.") (internal quotation marks omitted); *Lewis v. City of New York*, 11-CV-5044, 2014 WL 12829437, at *4 (E.D.N.Y. Jan. 2, 2014) ("[T]he fact that charges were dismissed or the defendant is ultimately acquitted does not mean that probable cause for the arrest did not exist.").

[20]        To the extent that Plaintiff suggests that the criminal charges against him were dismissed on December 16, 2022, because Defendant Czajka violated the 90-day warrant-expiration-notice requirement under N.Y. Crim. Proc. Law § 700.50(3), Plaintiff has not alleged facts plausibly suggesting that Defendant Finn knew, or had reason to know, that Czajka was likely to, or did, violate that requirement on December 8, 2021 (90 days after the expiration of the warrant on August 9, 2021).    This is especially true, given the factual allegations plausibly suggesting that Defendant Finn was present when Plaintiff was orally informed of the results of that warrant on September 7, 2021.    (Dkt. No. 19, at ¶¶ 21, 22, 25.)    *See also New York v. Bialostok*, 80 N.Y.2d 738, 747 (N.Y. 1993) ("While CPL 700.50(3) requires written notice, the failure to comply should not result in an order of suppression here when defendant had oral notice of the eavesdropping within the statutory period . . . .").

attempted to purchase an illegal firearm with the intent to distribute it to a third party and further conspired with another to obtain an illegal firearm to distribute it to a third party and/or failed to intervene in such unconstitutional actions despite having the opportunity to do so." (*Id*. at ¶ 70.) However, this conclusory allegation fails to allege facts plausibly suggesting (a) how or why this information was false, (b) how Defendant Finn in particular participated in its forwarding, (c) how prosecutors relied on it, and (d) how that reliance resulted in the denial of a fair trial. (*Id*.)

In any event, with regard to the third and fourth elements, when considering the reasonableness of any opportunity to intervene, one may consider (in addition to the intervening individual's physical proximity to the violation and the duration of that violation) whether the intervening individual had any authority or power over the offending individual(s). *See, e.g., Rendely v. Town of Huntington*, 03-CV-3805, 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30, 2006) ("Because Ryan and Rinker were civilian employees of the Town of Huntington, and thus not law enforcement officials, they had no authority of duty to intervene to prevent the Suffolk County police from taking plaintiff into custody.").[21]

Here, Defendant Finn was allegedly a City of Hudson Police Detective Sergeant, while the person who arrested Plaintiff (Defendant Keeler) was allegedly a New York State Trooper, and the person who commenced a criminal prosecution against Plaintiff (Defendant Burns) was

---

[21]    *See also Porter v. Sauve*, 15-CV-1106, 2016 WL 11807254, at *6, n.15 (N.D.N.Y. Jan. 29, 2016) (Sharpe, J.) ("[B]ecause there are no factual allegations in the complaint which plausibly suggest that Nurse Fairchild had the authority to intervene when correctional officers were forcibly extracting plaintiff from his cell, plaintiff's Eighth Amendment failure to intervene claim is dismissed as against this defendant."); *White v. Clark*, 12-CV-0986, 2012 WL 5877160, at *6 (N.D.N.Y. Nov. 20, 2012) (Mordue, J.) ("[D]efendants Smith and Rushford are identified as nurses, and there is nothing to suggest that they have the authority to intervene while correctional officers are using force on an inmate."); *Lewis v. Johnson*, 08-CV-0482, 2010 WL 3785771, at *8 (N.D.N.Y. Aug. 5, 2010) (Baxter, M.J.) ("In any event, [Nurse Davenport] lacked

allegedly a New York State Police Investigator.   (Dkt. No. 19, at ¶¶ 15-16 & Caption.)   Simply stated, the Amended Complaint does not allege facts plausibly suggesting that Defendant Finn possessed the authority to prevent Defendant Keeler from arresting Plaintiff, or Defendant Burns from commencing a criminal prosecution against Plaintiff, or the Columbia County District Attorney's Office from prosecuting Plaintiff under the circumstances alleged.   (*See generally* Dkt. No. 19.)

For each of these alternative reasons, the Court dismisses Plaintiff's Second, Third, and Fourth Claims against Defendant Finn.

### 6.    Whether, in the Alternative, Plaintiff's Claims for Punitive Damages Against Defendant Columbia County District Attorney's Office and Defendants Czajka and Carty in Their Official Capacity Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons offered by the moving Defendants.   *See, supra,* Parts I.B.1.a. and I.B.1.c. of this Decision and Order.

### B.    Motion Filed by the State Defendants

After carefully considering the matter, the Court dismisses Plaintiff's Second, Third, and Fourth Claims against the State Defendants for the reasons offered by the State Defendants. *See, supra,* Parts I.B.2.a. and I.B.2.c. of this Decision and Order.   To those reasons, the Court adds only three points (which are intended to supplement and not supplant the reasons of the State Defendants).

First, the State Defendants' arguments of lack of personal involvement are only strengthened by the implausibility of the violations in which they are alleged to have been

_____

the authority to intervene while correction officers were using force on an inmate, even if she were present.").

personally involved.    Contrary to Plaintiff's argument that the State Defendant have not challenged the elements of Plaintiff's claims, the State Defendants have done so with regard to several of those elements, and have done so successfully. As Plaintiff himself argues, his Second Claim (for false arrest) requires the element of the confinement being "not otherwise privileged" (e.g., not supported by probable cause); his Third Claim (for malicious prosecution) requires the element of the "lack of probable cause for commencing the proceeding"; and Fourth Claim (for denial of a fair trial) requires the elements of the creation and forwarding of "false information" likely to influence a jury's decision.    (Dkt. No. 38, at 4-5 [attaching pages "1" and "2" of Plf.'s Opp'n Memo. of Law].)

Here, the State Defendants have argued that the Amended Complaint does not allege facts plausibly suggesting that the State Defendants created, relied on, or forwarded any "false" information giving rise to a false arrest, malicious prosecution, or deprivation of the right to a fair trial.    *See, supra,* Parts I.B.2.a. and I.B.2.c. of this Decision and Order. As the Court has previously observed, just because the charges against Plaintiff were ultimately dropped (due to a lack of a "good faith defense" to Plaintiff's motion to dismiss) does not mean that his arrest was in fact false (i.e., without probable cause), that his prosecution was in fact malicious, or that his trial was in fact unfair.    *See, e.g., Warren,* 699 F.2d at 98; *Lewis*, 2014 WL 12829437, at *4. As the Court has also previously observed, Plaintiff's Amended Complaint lacks any factual allegations plausibly suggesting that the wiretapped text communications presumably giving rise to Plaintiff's arrest and prosecution were obtained without a warrant or through entrapment, or were in any way fabricated.    (*See generally* Dkt. No. 19, at ¶¶ 5, 8, 25, 27, 38, 40, 43, 50-57, 77.)

Simply stated, although it may be *conceivable* that the text communications between Plaintiff and Khalid Lord were not incriminating (and that Defendants Finn, Burns, and Tashjian simply threatened Plaintiff with a baseless prosecution if he did not cooperate with their investigation into the activities of Mr. Lord), that fact is *implausible*, given (1) the number of Defendants who treated the text communications as incriminating, (2) the number of different offices and departments employing those Defendants (and the different levels of government that those offices and departments were located in), (3) the duration of the investigation and prosecution of Plaintiff (during which time Defendants treated the text communications as incriminating), and (4) Plaintiff's conspicuous failure (in his 14-paged, 78-paragraph Amended Complaint) to allege the nature of his successful motion to dismiss in state court or even the simple fact that the text communications were not in fact incriminating.

Second, to the extent that Plaintiff suggests that the criminal charges against him were dismissed on December 16, 2022, because Defendant Czajka violated the 90-day warrant-expiration-notice requirement under N.Y. Crim. Proc. Law § 700.50(3), Plaintiff has not alleged facts plausibly suggesting that the State Defendants knew, or had reason to know, that Czajka was likely to, or did, violate that requirement on December 8, 2021 (90 days after the expiration of the warrant on August 9, 2021). This is especially true, given the factual allegations plausibly suggesting that Defendants Burns and Tashjian were present when Plaintiff was orally informed of the results of that warrant on September 7, 2021. (Dkt. No. 19, at ¶¶ 21, 22, 25.) *See also Bialostok*, 80 N.Y.2d at 747.

Third, and finally, to the extent that Plaintiff claims that the State Defendants did not directly take action giving rise to Plaintiff's Second, Third and Fourth Claims but failed to

intervene in that directly taken action, those claims are precluded for each of two reasons: (a) as a threshold matter, the Amended Complaint fails to allege facts plausibly suggesting any underlying constitutional violations in which the State Defendants could have intervened; and (b) in any event, the Amended Complaint fails to allege facts plausibly suggesting that the State Defendants were present during, and had the opportunity and authority to prevent, the directly taken action giving rise to those constitutional violations.

For all of these reasons, the Court dismisses Plaintiff's Second, Third, and Fourth Claims against the State Defendants.

### C.    Plaintiff's Remaining Claims Against John Does #1-10

After carefully considering the matter, the Court dismisses without prejudice Plaintiff's remaining claims against Defendants John Doe #1-10 for failure to diligently name under Fed. R. Civ. P. 41(b), failure to timely serve under Fed. R. Civ. P. 4(m), lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and/or failure to state a claim under Fed. R. Civ. P. 12(b)(6) for the reasons stated above.

**ACCORDINGLY**, it is

**ORDERED** that the County Defendants' and Defendant Finn's motion to dismiss Plaintiff's claims against them for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. Nos. 4, 31) is **GRANTED**; and it is further

**ORDERED** that the State Defendants' motion to dismiss Plaintiff's claims against them for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. Nos. 13, 18, 36) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 19) is <u>**DISMISSED**</u> **with prejudice**,[22] except for Plaintiff's First and Fifth Claims against the County Defendants to the extent those claims allege that those Defendants were acting in their prosecutorial capacity, which are <u>**DISMISSED**</u> **without prejudice**.

Dated: February 4, 2025
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

[22]     *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim [e.g., despite having been given leave to replead its claim], a complaint should be dismissed with prejudice.") (citation omitted).